## Fayette Seeley v. The State.

### No. 2153. Decided May 22, 1901.

**1.—Murder—Self-Defense—Charge of Court.**

On a trial for murder, where there was no evidence of an attack by deceased on the defendant, a charge of the court is erroneous which turned the issue of self-defense upon an actual attack made by deceased, and not upon a deadly or dangerous attack about to be made upon him, as shown by the testimony. Under the evidence, the danger was apparent, and the charge should not have assumed that it was actual or real.

**2.—Same—Flight—Charge of Court.**

On a trial for murder, a charge of court with reference to the evidence of defendants flight is upon the weight of evidence and erroneous, which instructed the jury, "the State has offered evidence that * * * immediately after the alleged homicide defendant left the State," which "testimony was admitted as tending to show conscious guilt of the offense for which he is now on trial, * * * you will consider said evidence in connection with all the other evidence in the case in determining whether the flight, if he fled, was caused by conscious guilt or by other circumstances."

**3.—Same—Evidence.**

On a trial for murder, where defendant testified that a party whom he believed was acting with deceased was in the act of drawing a pistol when he shot deceased, it was competent to prove that deceased was unarmed, as was also the party defendant claimed was in the act of drawing a pistol; and to further prove that after the shooting a witness was requested by said party to go two miles away to the ranch of deceased and get his pistol, which witness did.

**4.—Same—Self-Defense When There Are Two or More Assailants—Charge of Court.**

On a trial for murder, where there were more assailants against defendant than one, the slayer has the right to act upon the demonstrations of either, and to kill either if it reasonably appeared to him that they were present, acting together to take his life or do him serious bodily harm, and it is error for the court in its charge to fail to instruct the jury upon this phase of the law.

Appeal from the District Court of El Paso. Tried below before Hon. A. M. Walthall.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Robert L. Hall, on the 4th day of November, 1900, by shooting him with a pistol.

On the 3d of November, 1900, defendant went to the camp of deceased for the purpose of getting a horse that deceased's brother, T. K. Hall, had given him. Defendant remained at the camp assisting in working with a drove of horses until after the difficulty in which deceased

was killed.   After the killing defendant left and was not arrested until about ten days after, when he sent word to one Stewart, sheriff of Eddy County, New Mexico, that he desired to surrender, and thereafter did surrender to said sheriff.   The difficulty occurred about noon on the 4th day of November, 1900.   Defendant and others were at the camp ground, whither they had gone from the horse pen, where they had left deceased and his nephew Hol Herring, both of whom some little time after followed to the camp.   Defendant had finished eating dinner, as had also one or two of the others present, when deceased and his nephew rode up, dismounted, and proceeded to eat their dinners.   After deceased had finished eating he got up, threw down his plate and thus accosted defendant, "Seeley, I understand that you are going to swear that I have been killing XT horses, and if you do I will kill you."   Defendant made some reply, some of the witnesses saying he denied the matter with which deceased charged him, and immediately upon defendant's making such reply or denial, Hol Herring, deceased's nephew, spoke up, and speaking to defendant, said, "Yes, I understand Anderson to say that you and Stetson were going to swear that."   Deceased in the meantime while talking, or at the conclusion of his talk, to defendant, or as Herring spoke, picked up or attempted to pick up (some of the witnesses say he picked it up, "got it a foot and a half or two feet from the ground") an iron rod about three-fourths of an inch wide, about one-half inch thick, about two and a half or three feet long and sharp at one end.   At the same time Hol Herring, according to his own and other witnesses' statements, made an advance in the direction of defendant, and, as defendant says, threw his hand behind him as though to draw a weapon.   As Hall was raising up with the iron, defendant, who had been or was sitting down in a squatting position, arose, drew his pistol, and shot Hall and immediately fired on Herring.   The bullet entered Hall's body about four inches above the right nipple and came out between the tenth and eleventh ribs behind.   Hall was about six feet two inches in height, defendant about five feet four or five inches tall.   Herring was hit once, the other shots missing him.   Herring says defendant shot at him three times; the other witnesses say that Herring was shot at twice.   Upon the trial defendant insisted that Hall and Herring were in the act of and about to make a deadly assault upon him, and that in his necessary self-defense he was compelled to shoot.

*Edwards & Edwards* and *Seymour Thurmond,* for appellant.

*W. A. H. Miller* and *Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at fifteen years con-finement in the penitentiary.

Exception was reserved to the court's charge on self-defense, which portion of the charge is as follows: "If from the evidence you believe that defendant killed said Robert L. Hall, but further believe that at the time of so doing deceased had made an attack on him, which from the manner and character of it, and the relative strength of the parties, and defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that, acting under such reasonable expectation or fear, defendant killed deceased, then you should acquit. And if deceased was armed at the time he was killed, and was making such attack on defendant, and if the weapon used by him, and the manner of its use, was such as were reasonably calculated to produce death or serious bodily harm, then the law presumes the deceased intended to murder or aimed to inflict serious bodily injury upon defendant." This charge makes defendant's right of self-defense depend upon an actual attack then made on him by deceased, and not upon the deadly or dangerous attack about to be made upon him. There is no evidence showing deceased had made an attack on defendant. The immediate facts disclose that deceased got up from the dinner table, and said to defendant: "I hear that you are making some talk against me, and I hear that you are going to swear that I have been killing XT horses. You know that I never killed but one old gray mare, and if you swear that I killed any more I will kill you." Defendant denied making such statement, and Herring, a nephew of deceased, then said: "Yes; that man told me that you and that son of a bitch Stetson are going to swear that;" and defendant jerked his pistol, and shot Hall, and turned and shot witness through the left arm. Deceased was about fifteen feet from appellant when he was shot. Herring was about the same distance. The man referred to by Herring as communicating the statement to him was Anderson. According to some of the witnesses, when deceased made the statement above mentioned he had either picked up a piece of iron some three feet long, an eighth of an inch in thickness, and three-fourths of an inch in width, or was in the act of picking it up, and it was at this particular juncture that deceased fired the fatal shot. The charge referred to submits the case upon the theory that deceased had made an attack on defendant. This assumption is unwarranted, and turned the issue of self-defense, not upon apparent danger, but upon the fact that deceased had then made an attack. This charge has been condemned as erroneous. Phipps v. State, 34 Texas Crim. Rep., 560; Stewart v. State, 40 Texas Crim. Rep., 649.

With reference to flight of defendant, the court instructed the jury: "The State has offered evidence tending to show flight; that is, that immediately after the alleged homicide defendant left the State of Texas, and went to the territory of New Mexico. You are instructed that such testimony was admitted as tending to show conscious guilt of the offense for which he is now on trial, and you will consider it for no other purpose; and you will consider said evidence, in connection with

all other evidence in the case, in determining whether the flight, if he fled, was caused by conscious guilt or by other circumstances." Exception was reserved to this charge on the ground that it was on the weight of the evidence. The exception is well taken. The charge is upon the weight of the evidence. Clark v. State (Texas Crim. App.), 36 S. W. Rep., 273; Santee v. State (Texas Crim. App.), 37 S. W. Rep., 436.

The State was permitted to show by the witness McIntosh that he arrived at the scene of the trouble shortly after the killing, and after appellant had taken his departure, and remained for a short time, and was then sent by the witness Herring to the home of deceased, some two miles distant, for the purpose of bringing Herring's pistol to him at the place of the difficulty. He was told by Herring where the pistol could be found, and it was found as stated. He knew nothing of the whereabouts of the pistol, except as informed by Herring. Exception was reserved to this, on the ground that it was hearsay. The conversation occurring between McIntosh and Herring would perhaps be hearsay. Still, under the facts, we do not believe it was of sufficient importance to require a reversal of the judgment upon this ground. The State proved by Herring at the time he was shot his pistol was at Hall's residence, some two miles away. It was legitimate and proper to introduce this testimony. Defendant testified, and it was part of his defensive theory, that he thought that Herring and Hall, in combination, intended to kill or inflict serious bodily injury on him; and in this connection testified that Herring made a demonstration as if to draw a pistol, thus setting up apparent danger from that direction. To meet this, the State had the right to prove that Hall was unarmed, and that his pistol was two miles away, at Hall's ranch. It was a fact that could be proved by McIntosh that shortly after the difficulty, and before Herring had the opportunity of conveying the pistol to the ranch, the pistol was at the ranch; and the mere fact that he requested McIntosh to go for the pistol, if, strictly speaking, it is hearsay, was of such small moment that it would not require a reversal of the judgment, conceding the admission of this statement to be erroneous.

Exception was reserved to the court's charge on self-defense, because it failed to instruct the jury that appellant had the right to defend as well against Herring as against deceased. In addition to what has been heretofore stated as to the facts occurring immediately preceding and at the time of the difficulty, defendant himself testified: "While we were waiting, Hall and Herring rode up. Hall ate his dinner. Then walked up to me, and said: 'Seeley, I understand that you are going to swear that I have been killing XT horses, and if you do swear that I will kill you. You know that I haven't killed but one old gray mare.' I replied, 'I don't know about that.' Then Herring spoke up, and said, 'Here is Lum Anderson here; he said that you and that son of a bitch Stetson were going to swear that;' and I saw his eyes turn toward Hall, and he [Herring] threw his hand behind him, as if to draw a weapon, and as I turned my eyes to Hall I saw him reach for the iron that was

on the ground. At that I jumped to my feet, and shot him, and turned and shot Herring. In reply to Hall, I said, 'I don't know so much about it.' That was before Herring spoke up, and it was all that I said at the time. My attention was directed to Herring by this remark. My attention was then directed to Hall, because I saw Herring cast his eyes on Hall. Hall was then reaching for the iron, and had reached it. He got the iron. When Hall began talking to me, I was squatting down. I got out of that position when Hall started with the iron, and drew my pistol out of the waistband of my pants. While Hall was talking to me I was in a squatting position, with my hands on my lap; was in the same position when I threw my eyes from Herring to Hall. It was then I saw Hall reaching for the iron, and I then reached for my six-shooter. From the time I looked from Herring to Hall, until Hall reached for the iron and I pulled my six-shooter, it could not have been a second."

Where there are more assailants than one, the slayer has the right to act on the demonstrations of either, and to kill either, if it reasonably appear to him that they were present, acting together, to take his life or do him serious bodily harm. For collation of authorities, see White's Ann. Penal Code, sec. 1175. If it appeared to appellant that he was in danger of his life or of serious bodily injury at the hands of Hall and Herring, this phase of the law should have been given in the charge. The issue was presented by the testimony, and should have been given, and this omission was error on the part of the court. For the reasons indicated, the judgment is reversed, and the cause remanded.

.          *Reversed and remanded.*