## JOHN D. STACY v. THE STATE.

### No. 3224. Decided March 22, 1905.

#### 1.—Murder—Continuance—Defendant's Belief—Threats.

Where on application for continuance it appeared that defendant had sought deceased to have him answer for certain conduct towards the former's boys the day before the homicide, and that he derived the information of such conduct from his wife, and it became an important inquiry whether defendant believed the communication of his wife, and he also expected to prove by her threats of deceased, such testimony was material and diligence having been shown and it being the first application, the continuance should have been granted.

#### 2.—Same—Depositions—Diligence.

Where it appeared that defendant had propounded interrogatories to a witness in the State of Arkansas, but on account of the short period of time intervening between the return of the indictment and the trial, it was impossible to get the depositions returned in time, the diligence was sufficient, and the testimony of the witness being material the continuance should have been granted.

#### 3.—Same—Contradicting States' Testimony.

Where the defendant expected to show by the testimony of the absent witness the direction the shot took through the body of deceased in contradiction of the State's testimony, and had used proper diligence in procuring the attendance of said witness the continuance should have been granted.

#### 4.—Same—Charge of Court—Manslaughter.

Where it appeared that both the conduct of the deceased and his son had provoked the defendant in committing the homicide the court in instructing the jury on manslaughter should have submitted the conduct of the son as well as the father, and charged manslaughter on that phase of the case.

#### 5.—Same—Provoking the Difficulty—Charge of Court.

Where the evidence raised the issue of provoking the difficulty in a prosecution for murder, and the court charged upon the phase of murder and manslaughter according to the intent or want of intent on the part of defendant to kill, and also that if the language constituting the provocation was not reasonably calculated to provoke the difficulty that then the right of self-defense would remain, the jury should perhaps in addition have been instructed that if defendant had not used the language, then they would not consider the question of provoking the difficulty at all.

#### 6.—Same—Charge of Court—Defendants Standpoint.

In all cases of homicide the accused is to be treated as he understands the facts, and from the condition of his mind and the reason for his action, and the jury should be plainly, unequivocally and not negatively informed of the law in regard to this phase of the facts, and it was error to charge the jury that if they believed that a certain difficulty occurred between deceased and defendant's boys that then the defendant would have the benefit of it, etc., as it was defendant's belief of these matters that should have been submitted.

Appeal from the District Court of Franklin. Tried below before Hon. P. A. Turner.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

No brief for appellant has reached the hands of the reporter.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, and his punishment fixed at confinement in the penitentiary for a term of twenty years.

The application for continuance should have been granted. The diffculty culminating in the homicide was brought about by the conduct of the deceased and his sons toward the sons of appellant. There was a question as to whether or not the conduct happened on the part of deceased and his son. This was denied by the State and affirmed by appellant and his witnesses. On the night preceding the homicide, or on the morning just before the difficulty occurred, appellant had been informed of this conduct on the part of deceased and his boys. This information came from his wife. In this attitude of the case, it became an important question as to whether or not appellant believed the communications of his wife. The continuance was in part sought to obtain her testimony. She would have testified to the facts stated in the application. These were very material. Her absence is accounted for by reason of the fact that she was sick and confined to her bed. There is no contradiction of her condition and inability to attend the trial. This was the first application. The killing occurred on November 23. The indictment was returned November 26, and the application was overruled on November 30, and appellant placed upon trial and convicted. There is no question, in the light of the record, of the diligence, materiality or the fact that she would have testified to the facts set up in the application. Threats made by deceased against appellant were also expected to be shown. His wife would also have testified these occurred in her presence. Taylor was another absent witness by whom threats were expected to be proved. He was in Arkansas. Interrogatories were propounded, but on account of the rapidity of the occurrences from the time of the indictment until the trial it was impossible to get the depositions to Arkansas and answered and returned. This was material testimony, and the diligence sufficient. The testimony of Dr. Marrs was also desired. Sufficient diligence for him was shown. He was in Nacogdoches County at the time, although he lived in Wood County. Process was issued to Wood County, returned not executed, but the return indicated the witness was in Nacogdoches County. Process was issued to that county, but on account of the brevity of time, it was not served. His testimony was of a material character and intended to contradict that of Dr. Baber, who testified as

to the wound and the direction the shot took through the body. It is alleged that Marrs would have testified differently and favorably to appellant. Without going into a detailed statement further in regard to this application we hold that it should have been granted.

The charge of the court on manslaughter is criticised. The facts show that on the morning of the homicide, and immediately after appellant learned of the treatment of his boys the previous day, he drove down to the mill owned by deceased, which was about a half mile distant from appellant's residence. Upon approaching deceased appellant inquired the reason for his mistreatment of the boys. This was denied by deceased and affirmed by appellant. Deceased was leaning over or "squatted down" by a box containing a lot of old irons, and immediately arose to an erect position, when appellant spoke to him, with a king-bolt in his hand some thirteen or fourteen inches long and in inch or more in diameter; and started in the direction of appellant who told him to "Drop it; drop it or he would shoot him." A son of deceased, who was standing by, had a grubbing hoe in his hand; and started in the direction of appellant, with the hoe drawn, as testified by some of the witnesses, but the boy himself stated that he had not drawn it but was pulling it along the ground. Manslaughter was charged alone with reference to the conduct and provocations on the part of deceased. The conduct of the boy entered into this phase of the case as much so as did his father's; and if appellant's mind became excited or was excited from these causes, upon the part of both, he had the right to interpose manslaughter against murder, and the right to have the law of manslaughter given, as much so as to the boy as he had against the acts of deceased alone. This criticism of the charge is correct.

The charge on self-defense is criticised. That portion of it with reference to defending against the attack of the son, is in a very negative and indefinite form. This should have been given affirmatively, for defendant had the same right to defend against both that he had to defend against either. As before stated, while the charge was given in the negative form, upon another trial it should be affirmatively presented.

It is further contended that the court should not have charged the law upon the issue of provoking a difficulty. If the testimony of Pifer and appellant's son be considered we are of opinion that this charge was not error. Witness Pifer testified that appellant remarked to deceased, as he approached him, "I want to know what you three God damn cowards pitched into my boy for yesterday." Chas. Pennington, the boy who was with his father and who had the hoe at the time of the difficulty, testified that when appellant came up he said, "What are you damn three big cowards running over my boy for." Of course this was denied by some of the other eye-witnesses, but that is a question of fact to be decided by the jury. Under this testimony we believe the charge on provoking the difficulty was justified. The court charged the jury with reference to this phase of the law that, if this language was used for the purpose of provoking a difficulty and did provoke it, that it would

abridge appellant's right of self-defense. If the language used was for the purpose of bringing on a difficulty with intent to kill it would be murder; if not for that purpose, and it brought on a difficulty, then it would. be manslaughter. He further charged the jury, if appellant used the language and it was not reasonably calculated to provoke the difficulty, and was not intended for that purpose, but did provoke the difficulty, then the right of self-defense would remain. It was an issue in the case as to whether he used this language. The jury should perhaps have been instructed, if he did not use it, then they would not consider that question at all, and appellant would not be held to provoke the difficulty. This character of charge was not given.

There is another question in the charge criticised by appellant. All the way through, on the question with reference to the difficulty occurring the day previous, between deceased and his boys on one side and appellant's son on the other, the jury are told, if they believe these matters occurred, then appellant would have the benefit of it in regard to the different charges given. This charge is criticised because it did not submit to the jury the question of appellant's belief in regard to it; the jury may not have believed it as it was a disputed issue, but the case must be tried from appellant's standpoint. He had been informed that these matters occurred, and had a right to talk with deceased in a peaceable manner in regard to it; and if he believed those things, he had the right to act upon them as if they were true, whether the jury believed them or not. We look to the condition of appellant's mind to ascertain the reasons, motives and purpose of his action; and not from the standpoint of the jury. In all homicide cases, the accused is to be treated as he understands the facts, and from the condition of his mind and the reason for his action, and the jury should be plainly, unequivocally and not negatively informed of the law in regard to this phase of the facts.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Henderson, Judge, absent.