CRUZ RECEN v. THE STATE.

No. 511.   Decided March 9, 1910.

**1.—Assault to Murder—Self-Defense—Harmless Error.**

Where, upon trial for assault with intent to murder, the theory of the defense was that neither the defendant nor his companion had fired the alleged shot, and did not claim self-defense, the court should not have charged upon this issue; inasmuch, however, as the charge was favorable to the defendant there was no reversible error.

**2.—Same—Charge of Court—Self-Defense—Different Assailants.**

Where, upon trial for assault with intent to murder, the evidence showed that several parties were grouped together with the party injured around the defendant and his companion, and that they had fired at defendant, a charge of the court which restricted defendant's self-defense against the party injured was reversible error.

**3.—Same—Charge of Court—Aggravated Assault.**

Where, upon trial for assault with intent to murder, the evidence raised the issue of an attack upon defendant by the party injured and those associated with him, suddenly, unexpectedly, and in the night, the court should have charged on the issue of aggravated assault.

Appeal from the District Court of Caldwell. Tried below before the Hon. L. W. Moore.

Appeal from a conviction of assault with intent to murder; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*O. Dickens,* for appellant.—On question of refusing defendant's special charge: Freeman v. State, 52 Texas Crim. Rep., 500, 107 S. W. Rep., 1127; Stapleton v. State, 56 Texas Crim. Rep., 422, 120 S. W. Rep., 866; Wheeler v. State, 56 Texas Crim. Rep., 547, 121 S. W. Rep., 166; Lee v. State, 55 Texas Crim. Rep., 379, 116 S. W. Rep., 1153; Evans v. State, 55 Texas Crim. Rep., 649, 117 S. W. Rep., 167; Mattison v. State, 54 Texas Crim. Rep., 514, 114 S. W. Rep., 824; Anderson v. State, 34 Texas Crim. Rep., 546.

On court's failure to charge on aggravated assault: Palmer v. State, 47 Texas Crim. Rep., 268, 83 S. W. Rep., 202; Griffith v. State, 47

Texas Crim. Rep., 64, 78 S. W. Rep., 347; Mooney v. State, 65 S. W. Rep., 926; Williams v. State, 42 Texas, 392; Chatman v. State, 40 Texas Crim. Rep., 272, 50 S. W. Rep., 396; Cubine v. State, 45 Texas Crim. Rep., 108, 73 S. W. Rep., 396.

On the court's action in charging on self-defense, which was not in the case: Beard v. State, 47 Texas 'Crim. Rep., 50, 81 S. W. Rep., 33; Cooper v. State, 48 Texas Crim. Rep., 36, 89 S. W. Rep., 1068; Johnson v. State, 5 Texas Crim. App., 43; Edwards v. State, 5 Texas Crim. App., 593.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was indicted in the District Court of Caldwell County on the 29th day of October, 1909, charged with an assault with intent to murder one J. L. Lane. At a trial had in said court on the 6th day of November thereafter he was found guilty and his punishment assessed at confinement in the penitentiary for a period of seven years.

The case in its facts presents rather an unusual condition of affairs, and we have not been wholly satisfied with the result reached, though out of deference to the action of the trial court we would scarcely feel justified in reversing the judgment of conviction on this account. The evidence showed that there had been at Bodeman's Hall, near Lockhart, in Caldwell County, for some three or four days, a Mexican celebration in progress, and that on the last night of this celebration while appellant, in a small express wagon, with one Pedro Faz, was returning home, the transaction occurred out of which this charge grew. It seems that appellant and Faz were ahead in a small express wagon, and that behind them was a hack which contained both men and women, among others, the wife of appellant. J. L. Lane, who was constable of Precinct No. 1, in Caldwell County, A. W. Ellison, a special deputy, and Lloyd Blundell were on horseback, two on one horse and the other riding alone. Lane says he heard some shooting before he undertook to arrest the parties, and that starting out to investigate he first overtook the hack, and that the occupants of it said the shooting was in the next wagon ahead of them; that he followed on about 150 or 200 yards, and was not saying or doing anything, and that when he got near to where they were he went to go on the right hand side of the wagon when one of the occupants fired at him, as he says, from between the two men who were sitting on the seat of the little express wagon; that at this time he was about fifteen feet in the rear of the hack. That the first thing he did or said to them was to call out to them to halt, and it was then they shot, and began whipping up their horse; that he then rode up right by the side of them, and that as he passed by them or was about even with them they shot at him again, and he shot the first time, and caught hold of the bridle reins, when Mr. Ellison began shooting at them, and the horse

backed into the side of the road and they began to hollo, "Cuidado!"
They testify further that they searched the parties and found no pistol
in their pockets, but that Blundell picked up a pistol under the seat,
and that he found a handful of cartridges in the pocket of appellant.
He also testifies there was a little child in the wagon with these two
men.  This testimony, in a general way, was corroborated by that of
Blundell and Ellison.  On the other hand, all the Mexican witnesses,
of whom there were quite a number, testify that the firing was done
by the men on horseback; that they were drunk and quite abusive, and
both appellant and his companion Faz testify that neither of them
at any time fired a single shot, and that the pistol which was found
in the wagon was at the time when found wrapped up in a flour sack
and placed in a morral, and was under the seat in the wagon.  They
both testified that they were shot from behind, and the physician
introduced testified they were both shot in the right arm.  In addition
to this, Faz testified, and it seems that his wound was exhibited, that
he was shot in the shoulder, and the bullet was still in his body, and
he had lost the use of his arm, and was at the time of the trial spitting
blood.  Lane, it seems from the evidence, was not shot, but he was
powder burned, and had some signs of powder burns in his eye at and
soon after the occurrence.  The parties were unacquainted with each
other.  The evidence of the Mexicans is to the effect that none of them
had been drinking, nor is there any evidence at all satisfactory from
any other source that they had been.  There was no motive or occa-
sion shown for these Mexicans or either of them to have assaulted the
officers.

1.  In this condition of affairs the court, over the protest of appel-
lant, charged on the issue of self-defense, his theory and contention
being that neither himself nor his companion had fired at all; that it
was not a case of self-defense, but that their defense rested in the fact
that they had done no act which was at all criminative, and had fired
no shot either offensive or defensive.  The case is unusual in that
appellant is standing up protesting against the submission of an issue
which might at first blush seem favorable to him, and yet in view of
his contention that he had fired no shot at all, it is not unreasonable
perhaps to assume if the case rested solely on his testimony, that a
charge of the court submitting the issue of self-defense might be harm-
ful in that it might impress the jury that the mere fact of the submis-
sion of such an issue was some intimation by the court that appellant
had fired, under some circumstances, a shot.  In view, however, of
all the circumstances, and considering the evidence of the State, we
think perhaps the issue of self-defense was raised in the evidence, and
that in any event, since the charge in its last analysis was favorable
to appellant, he is without just cause of complaint.

2.  If, however, it could be said that self-defense was in the case,
then we think there was error in the following paragraph of the court's
charge:  "If the jury should believe from the evidence that said J. L,

Lane or anyone acting with him did shoot the said Cruz Recen, and if you further believe the defendant did not shoot at said J. L. Lane, or if he did not until said Lane had shot at said Cruz Recen, or if you have any reasonable doubt of this you should acquit." The error in this paragraph of the charge is in the following clause: "Or if he did not until said Lane had shot at said Cruz Recen," because it is apparent that if under the circumstances either of the parties with Lane, Blundell or Ellison, all grouped closely as they were, had fired at appellant, his right of self-defense would apply with reference to an assault by them as well as against an assault by Lane, and this rule is recognized in the first portion of the paragraph of the charge but is not clearly continued in the clause complained of.

3. Again, complaint is made that the court erred in not charging on the law of aggravated assault. We think in view of the fact that there was no motive shown for the shooting; that the parties were strangers; that the testimony raised the issue of an attack upon appellant by Lane and those associated with him, suddenly, unexpectedly, and in the darkness, producing, if their testimony is to be believed, serious wounds, that on many grounds the issue of sudden terror, rage and resentment is raised in the evidence, and that the court should have submitted the issue of aggravated assault.

For the errors pointed out the judgment is reversed and the cause is remanded.

*Reversed and remanded.*