CLAYTON BLACK AND SHANDRA JOHNSON V. THE STATE.

No. 1477.   Decided February 14, 1912.

Rehearing denied April 3, 1912.

**1.—Assault to Murder—Charge of Court—Self-Defense.**

Where, upon trial of assault to murder, it was a sharply contested issue as to whether defendant's assailant was armed, it was error to instruct the jury to view the matter as they believed it occurred instead of from defendant's standpoint.

**2.—Same—Charge of Court—Overt Act—Apparent Danger—Different Assailants.**

Where, upon trial of assault to murder, the evidence showed from defendant's standpoint that a conspiracy existed among the alleged injured parties to kill defendants, etc., a charge of the court that the defendants could not act in self-defense, unless each of the alleged assailants did some overt act, although one of them was making such attack, the same was reversible error.

**3.—Same—Charge of Court—Defense of Another.**

Where defendants were tried for assault with intent to murder, and there was evidence of a conspiracy among the alleged injured parties and threats to kill the defendants, etc., and it was claimed by the prosecution that such threats and conspiracy did not include both defendants, it was, nevertheless, the right of the other defendant to defend the one whose life was sought by said parties, and the court should have so instructed the jury.

**4.—Same—Charge of Court—Different Assailants—Self-Defense.**

Where, upon trial of assault to murder, the evidence for the defense showed that several parties had conspired to injure defendants by either killing them or doing them serious bodily injury; that they were acting together and were armed, and one of them made an assault upon one defendant to bring on the difficulty, it was reversible error in the court's charge to make defendants' right to act in self-defense, depend on whether the jury believed that after the shooting began between said assaulting party and one of the defendants, the other parties did some overt act.

**5.—Same—Charge of Court—Conspiracy.**

Where, upon trial of assault to murder, defendants claimed that the parties alleged to have been injured had conspired together to kill or seriously injure the defendants, the act of one of these parties was the act of all if this conspiracy existed, and it was reversible error in the court's charge on self-defense, to charge that appellant's right of self-defense depended upon some overt act of each of the assailants; one of them having begun the difficulty.

**6.—Same—Rule Stated—Conspiracy.**

The law of conspiracy is the same whether the State or the accused is seeking to use it; it can be used defensively as well as offensively. Following Carson v. State, 57 Texas Crim. Rep., 394, and other cases.

**7.—Same—Self-Defense—More than One Assailant.**

Where there are more than one assailant the slayer has the legal right

to act upon the hostile demonstration of either, or from any information that leads him to believe that they are acting together against him, if they are present at the time the difficulty is begun, and are in any way encouraging, aiding or advising the real assaulting party, and it so appears to the accused. Following Thomas v. State, 49 Texas Crim. Rep., 633, and other cases.

### 8.—Same—Charge of Court—More than One Assailant.

If there be evidence in the record which, viewed from the defendant's standpoint that he was in danger from more than one assailant, the charge must state that he had the right to defend against all assailants. Following Stacey v. State, 48 Texas Crim. Rep., 95, and other cases.

### 9.—Same—Self-Defense—Charge of Court—Case Stated.

Where, upon trial of assault with intent to murder, the theory of the defense was that the acts of one of the alleged injured parties in making a hostile demonstration against the defendants were the acts of all and the beginning of the execution of their threats, it was reversible error not to charge the jury to view the matter from defendant's standpoint, upon the theory of conspiracy, and that defendants had the right of self-defense against all of their assailants without waiting for an overt act from each of them.

### 10.—Same—Charge of Court—Accidental Shooting.

Where, upon trial of assault with intent to murder by two defendants against a number of other persons, there was no evidence that one of these persons was shot accidentally, but the theory of the State was that the defendants began the difficulty by shooting one of the said parties and then this person, and the defendants claimed self-defense, a charge on accidental killing was reversible error.

### 11.—Same—Charge of Court—Principals—Burden of Proof.

Where, upon trial of assault to murder, the defendants claimed self-defense against a number of assailants, it was reversible error in the court's charge to instruct the jury that if one of the defendants shot one of the assaulted parties and they believed that the other defendant was not a principal thereto, to acquit him, as it shifted the burden of proof.

### 12.—Same—Charge of Court—Conspiracy.

Where, upon trial of assault to murder, the defendants claimed that a conspiracy existed among the parties alleged to have been injured, and the evidence showed that one of said parties begun the difficulty according to defendant's testimony, the court should have submitted the law of conspiracy as it applied to said parties, and that if from defendants' standpoint, there existed a reasonable apprehension or fear of death or serious bodily injury, they would have the right to anticipate such attack, and if necessary, shoot first.

### 13.—Same—Charge of Court—Adequate Cause.

Where, upon trial of assault to murder, the court instructed the jury with reference to adequate cause that a serious personal conflict in which great injury is inflicted was adequate cause instead of submitting the law that such adequate cause must exist prior to the time of such conflict the same was reversible error.

### 14.—Same—Evidence—Conspiracy—Undisclosed Motive.

Upon trial of assault to murder, where the defendants claimed a conspiracy on the part of the parties alleged to have been injured, to kill the defendants, etc., testimony that these parties carried guns on a peaceful mission, such motive not being known to the defendants, was inadmissible.

### 15.—Same—Evidence—Motive.

While, upon trial of assault to murder, the motives of the defendant, ill-feeling between the parties, etc., were admissible; yet, mere expressions in the absence of the defendants were not admissible.

Appeal from the District Court of Taylor. Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of assault to murder against defendant, Black; penalty, five years imprisonment in the penitentiary, and for aggravated assault against the defendant, Johnson; penalty, ninety days confinement in the county jail.

The opinion states the case.

*Brewer & Crockett* and *Dallas Scarborough* and *Scott & Brelsford,* for appellant.—Where the evidence raises the issue that the assaulted parties had entered into a conspiracy to kill or seriously injure the defendants, and where one of the conspirators commits an overt act which, viewed from the defendants' standpoint, would create in their minds a reasonable apprehension of death or serious bodily injury, the defendants would have the right to shoot the injured parties who made the overt act or any one or all of the co-conspirators who were present at the time the overt act was made by the assaulting parties. Jones v. The State, 20 Texas Crim. App., 665; Cartwright v. The State, 16 Texas Crim. App., 473; McLaughlin v. The State, 10 Texas Crim. App., 340; Bean v. The State, 8 S. W. Rep., 278; Meuly v. The State, 9 S. W. Rep., 563.

The right of self-defense was limited to the sole action of Hamilton in drawing a pistol and presenting it at these defendants. The defendants having a right to act in self-defense, if in the act of these parties assembling at such places and under such circumstances as they did assemble, created in the minds of the defendants a reasonable expectation of death or serious bodily injury at the hands of the injured parties, then the defendants would have the right, regardless of whether or not Hamilton drew a pistol, to shoot the injured party. Boddy v. The State, 14 Texas Crim. App., 528; Burrell v. The State, 18 Texas, 713; Marshall v. The State, 40 Texas, 200; Lindsay v. The State, 1 Texas Crim. App., 327; Lopez v. The State, 42 Texas, 298.

It is error for the court to charge the jury upon any matter not raised by the evidence. Reference is here made to the entire statement of facts, an examination of which will disclose that there is not a word of evidence from any witness who testified on the trial of this case that the injured party, Bill Eckles was shot by an accident. Prewitt v. The State, 29 S. W. Rep., 792; Foster v. The State, 8 Texas Crim. App., 248; Cunningham v. The State, 11 S. W. Rep., 485; McSpatton v. The State, 18 S. W. Rep., 298; O'Mealy v. The State, 1 Texas Crim. App., 180; Simms v. The State, 4 Texas Crim. App., 144; Taylor v. The State, 13 Texas Crim. App., 184; Shackelford v. The State, 27 S. W. Rep., 8.

The uncontradicted testimony in this record is that Clayton Black or Shandra Johnson shot Bill Eckles on the day of the difficulty. Now, if Shandra Johnson shot Bill Eckles in order for Clayton Black to be guilty, the evidence must show that Clayton Black was a principal and

this was for the jury to find; both of the defendants were shooting at the injured party Bill Eckles and the testimony is undisputed and we here refer your honors to the entire statement of facts. ·Code of Criminal Procedure, article 765; Jones v. The State, 13 Texas Crim. App., 1; Hampton v. The State, 1 Texas Crim. App., 652; Cesure v. The State, 1 Texas Crim. App., 19; Black v. The State, 18 Texas Crim. App., 124; Gillian v. The State, 3 Texas Crim. App., 132; Wallace v. The State, 9 Texas Crim. App., 299.

Reference is here made to the entire charge of the court which shows that only once did he charge the jury that the appearances of danger should be viewed and judged of from the standpoint of the defendants and that in the abstract and not in his charge applying the law to the facts. Reed v. The State, 11 Texas Crim. App., 509; King v. The State, 13 Texas Crim. App., 277; Price v. The State, 18 Texas Crim. App., 474; Brumley v. The State, 21 Texas Crim. App., 222; Patillo v. The State, 3 S. W. Rep., 766; Spearman v. The State, 4 S. W. Rep., 586; High v. The State, 10 S. W. Rep., 238; Childers v. The State, 16 S. W. Rep., 903; Jones v. The State, 26 S. W. Rep., 1082; Phillips v. The State, 31 S. W. Rep., 397.

*C. E. Lane,* Assistant Attorney-General, for the State.—Cited cases in opinion.

DAVIDSON, PRESIDING JUDGE.—Black was given five years in the penitentiary for assault with intent to murder, and Johnson was alloted ninety days in the county jail for aggravated assault.

The case arose in Howard County, and was transferred to Eastland County where a trial was had resulting in an acquittal for shooting one of the alleged injured parties. The court thereupon changed the venue to Taylor County, where this conviction occurred.

The facts, in substance, show that about a month prior to this difficulty Black and one of the Echols had a shooting affair growing out of remarks made by Echols charging Black's wife with promiscuous unchastity. That Echols was not a participant in this difficulty. Subsequently, there was threatened trouble in the little town of Coahoma between the alleged injured parties on one side and Black on the other. The difficulty seemed to have assumed rather serious proportions at one time, but it was finally settled, and the parties made friends, agreeing to drop the troubles. On the night following this matter as Black was going from town where these troubles had occurred to his ranch, he was fired upon several times by two parties hid in ambush, one of the rifle balls taking effect in his leg. His saddle was also struck. On the day prior to the difficulty in question appellants had been notified that the four alleged injured parties had stated, in substance, that nothing but a first class killing would be satisfactory. In other words, that they threatened to kill the two appellants, and appellants were warned against these threats. On the morning of the difficulty, and following

the warning of appellants, the injured parties consisting of the two Echols, Fletcher and Hamilton came to Coahoma all heavily armed. There were rifles, shotguns and pistols brought by them. Price Echols and Hamilton went to the bank, carrying their guns with them. This building joined that in which the appellants were employed as clerks. The other two, Bill Echols and Fletcher did not go to the bank, but stopped their teams over near the railroad track and were about the two stores of Bowden and Riley. There were some matters of which the appellants testified that occurred at the bank by one of the parties, that gave them uneasiness, and they were closely on the watch of the movements of the four alleged injured parties. Echols and Hamilton left the bank and went across the railroad track to where the other two parties were. Directly after this Hamilton came from Bowden's store or Riley's, and was approaching the store in which appellants were clerking. The testimony for the appellants is that Hamilton as he came in the direction of where appellants were, had his pistol in his hand and made movements as if to shoot, whereupon Johnson, who had secured his rifle, fired. The testimony is conflicting as to who fired the first shot, some of it indicating that Hamilton did and some that Johnson did. Appellant's testimony is to the effect that Johnson's first shot struck Hamilton in the right arm causing him to drop his pistol, and that he immediately fled and ran off, and went into the residence of Mr. Gamble. It is further in evidence that a pistol was picked up at or about the point where Hamilton was shot. Bill Echols claimed, however, that was his pistol, and that he dropped it. That was an issue in the case about which the testimony was in conflict. This brought up the issue as to who began the difficulty. Appellants claim that Hamilton was approaching the store in such way as to indicate to them that the threatened difficulty had then begun. Immediately upon this occurrence the firing became general. One of Johnson's eyes was shot out, and three of the other parties, including Hamilton were shot. All parties sought to cover themselves as well as they could by any object that would screen them from the shots from the opposing sides. All of the alleged injured parties lived in the country, and came to town that day together. In their testimony they disclaim having gone to town to kill Black and Johnson. Fletcher was the father-in-law of Johnson and there was some bad feeling between the parties growing out of the separation of Johnson and his wife. It is also in evidence that Hamilton was the cause of this separation; that he had intervened between Johnson and his wife and alienated her affections from Johnson to himself. Fletcher had permitted Hamilton to be about his home where Mrs. Johnson resided after her separation from her husband, and had also given him some employment about the place. One of the Echols was related to Fletcher by marriage, they having married sisters. The evidence, generally, shows that it was generally understood and believed about the town during the day, from the time the parties reached town early in the morning until the shooting oc-

curred, that a difficulty would occur between the contending parties. Everybody seemed to have anticipated that such would be the case.

1. Under this state of facts the court charged the jury, in part, as follows:

"Should you believe from the evidence that one of the defendants shot the said Bill Echols, if he did do so, but you should further believe that prior thereto, the witness Hamilton either presented a pistol toward the defendant, Shandra Johnson, or made an attempt to present a pistol toward said Shandra Johnson, or if it then so reasonably appeared to said Shandra Johnson, producing in his mind a reasonable expectation or fear of death or some serious bodily injury at the hands of the said Hamilton, and that acting under such reasonable apprehension of danger, the said Shandra Johnson began shooting at the said Hamilton, and that during said difficulty, one C. L. Fletcher, or one Price Echols, or the said Bill Echols, either separately or together, or with others, attempted to engage in said difficulty, or it then so reasonably appeared to the defendants, and it then further reasonably appeared to either of said defendants, that the said Bill Echols was then acting with the said Hamilton, or with the said C. L. Fletcher, or Price Echols, with the apparent intention of inflicting death or some serious bodily injury upon himself or upon the said other defendant, producing in his mind a reasonable expectation or fear of death or some serious bodily injury, either to himself or to said other defendant, and that acting under such reasonable apprehension of danger, the defendant to whom such facts reasonably appeared, shot the said Bill Echols, then you would acquit both of the defendants."

Quite a number of exceptions were reserved to this charge, among others, that it instructed the jury to view the matter as they believed it occurred, and as it presented itself to them and not to the defendants. It was a sharply contested issue as to whether Hamilton was armed or not at the time, the State's evidence denying that he was armed with a pistol as contended by appellants, and they swearing positively that he had a pistol and was approaching them and presenting it and fired at the time Johnson shot him. It is not how the case presents itself to the jury at the time from the appearances but the question is how these appearances are viewed by the defendant as he saw and believed them to be at the time of the difficulty. Again it is objected to this charge that the jury was instructed that Bill Echols must make some overt act and that although they might believe that Hamilton had committed an assault, yet before the defendants would have the right to shoot Bill Echols, Bill Echols must have been guilty of some overt act at the time which produced in the minds of the defendants, or either of them, a reasonable expectation or fear of death or serious bodily injury at his hands, and acting on such apprehension of danger, shot the said Bill Echols and so of the other Echols and Fletcher. It is contended that the charge limited the right of defendants to shoot Bill Echols to the fact that he, Bill Echols, was at the

very time of the shooting making some overt act or demonstration to shoot the defendants. It is claimed this was error for the reason that if the defendants believed from the appearances, from information and all the facts that a conspiracy had been entered into by the two Echols, Fletcher and Hamilton to do them serious bodily injury or kill them, and that Bill Echols or anyone of the four were present at the time that Hamilton made this overt act or was approaching them with a pistol, and was in any way aiding, or encouraging him or that Hamilton, by his movements, had begun the difficulty in which they were all to act, then they would have the right of self-defense against all four antagonists from the standpoint that this was the beginning of the execution of the conspiracy to kill them or do them serious bodily harm. If in pursuance of the conspiracy that had been formed by the parties Hamilton was approaching appellants armed with a pistol, or with a view of bringing on the difficulty, then it was not necessary that any *overt* act be done by Bill Echols or the others. It was the beginning of the execution of the conspiracy, and all parties were equally responsible with Hamilton. The charge given limits the right of the defendants to shoot to the overt act of Hamilton in drawing and presenting a pistol, and the subsequent overt act of each of the others only as they began to shoot. This is not a correct proposition of the law as applied to the facts of this case. The act of Hamilton from this viewpoint was the act of each and all of them, and this being the beginning of the difficulty in the execution of the previous threats to kill and the conspiracy, authorized appellants to act against either or all of them. And it is further correct that if the threat and conspiracy did not include both appellants, that the right of the other to defend the one whose life was sought was as perfect as if he was included. He had the same right to defend the one who was assaulted as the one assaulted had the right to defend himself. This statement of the law is made dependent upon the defensive theory that the injured parties, or either of them, begun the difficulty or acted in such manner as to bring about the difficulty. In that event both appellants had the same right to defend. The charge given by the court does not so instruct the jury, but made appellants right to act against Hamilton, and their further right of self-defense against the others, depend on whether or not the jury believed that after the shooting begun between Hamilton and Johnson, that Fletcher and the two Echols thereafter engaged in the further prosecution of the difficulty. This we understand not to be the law of this case under the facts viewed from the defendants' standpoint. Their viewpoint as shown by the facts was that their lives had been threatened by the alleged injured parties; that they had stated they were going to have a first-class killing of the appellants; that they came to town early the morning of the difficulty for that purpose, were heavily armed to execute their threats, and that there was a conspiracy to do the very thing that was done, and that Hamilton was put forward to bring on the difficulty, while the others were

to shoot from their respective places. In the evidence these views find support, and the appellants say they acted upon these matters, believing they were to be killed in pursuance of the previous threats and conspiracy. If appellants believed a conspiracy existed and their lives had been threatened and that Hamilton was put forward by the other parties to bring on the difficulty, and that he was acting to bring about the consummation of that design, then all being present for that purpose were equally guilty with Hamilton. The overt act of Hamilton was the overt act of each and all of them. Their presence aiding, encouraging, or advising Hamilton made them equally participants with Hamilton. They did not have to commit some overt act such as shooting to make them particeps criminis with Hamilton in order to justify appellants in shooting. The act of Hamilton was the act of all, and justified appellants if they believed the facts so to be. The act of one conspirator in the furtherance or execution of the design or object of the conspiracy is the act of all, and the court should have so instructed the jury, and in instructing them that appellants' right of self-defense depended upon some overt act of the two Echols and Fletcher after Hamilton begun the difficulty, was clearly erroneous, and imposed a burden upon appellants' right of self-defense under the facts of this case, which is contrary to the law. If the four alleged parties had been on trial for shooting Johnson or Black or both, the court, in order to give a correct charge for the State from that viewpoint, would have been called upon to instruct the jury and a conviction would have been justified against the alleged injured parties, under the theory that if they were acting together at the time and were present when Hamilton made the assault, they would be equally guilty with Hamilton, and for all the results occurring during the difficulty. The law of conspiracy is not changed because the accused relies upon it as a defensive theory to protect his life or person from serious bodily injury. The law of conspiracy is the same whether sought to be used by either side and the actions of the conspirators is the same in legal effect. The law applicable thereto is the same whether the State or the accused persons are seeking to use it. It can be used defensively as well as offensively. The authorities in this State are thought to be harmonious on this proposition. See Jones v. State, 20 Texas Crim. App., 665; Carson v. State, 57 Texas Crim. Rep., 394; Thomas v. State, 49 Texas Crim. Rep., 633; McLaughlin v. State, 10 Texas Crim. App., 340; Bean v. State, 25 Texas Crim. App., 346; Meuly v. State, 26 Texas Crim. App., 274.

Again the law seems to be well settled that where the contention is there are more than one assailant, the slayer has the legal right to act upon the hostile demonstrations of either, or from any information that leads him to believe that they are acting together against him, if they are present at the time the difficulty is begun and in any way are encouraging, aiding or advising the real assaulting party and it so ap-

pears to the accused. See cases, supra. Branch's Criminal Law, section 450.

If there should be more than one assailant, then the slayer has the right to act upon the hostile demonstrations of either, if it reasonably appeared to him that they were present for the purpose of acting together to take his life or do him some serious bodily injury. Carson v. State, 57 Texas Crim. Rep., 394; Thomas v. State, 49 Texas Crim. Rep., 633. If there is evidence of more assailants than one, the charge must inform the jury that the accused can defend against either, and it is error to require the jury to believe or find that there was more than one assailant attacking the accused. Cartwright v. State, 16 Texas Crim. App., 473; Jones v. State, 20 Texas Crim. App., 665; McLaughlin v. State, 10 Texas Crim. App., 340; Bean v. State, 25 Texas Crim. App., 346; Carter v. State, 37 Texas Crim. Rep., 403; Seeley v. State, 43 Texas Crim. Rep., 66; Stell v. State, 56 S. W. Rep., 797; Scott v. State, 46 Texas Crim. Rep., 305; Stacy v. State, 48 Texas Crim. Rep., 95; Nelson v. State, 48 Texas Crim. Rep., 274; Meuly v. State, 26 Texas Crim. App., 274; Branch's Crim. Law, section 450.

If there be evidence in the record which, viewed from the defendants' standpoint, that he was in danger from more than one assailant, the charge must state that he had the right to defend against all assailants. Stacy v. State, 48 Texas Crim. Rep., 95; Roberts v. State, 48 Texas Crim. Rep., 378; Arnwine v. State, 50 Texas Crim. Rep., 254; Seeley v. State, 43 Texas Crim. Rep., 66; Gant v. State, 55 Texas Crim. Rep., 284; Recen v. State, 58 Texas Crim. Rep., 457; Norris v. State, 42 Texas Crim. Rep., 559; Garner v. State, 45 Texas Crim. Rep., 308; Barron v. State, 23 Texas Crim. App., 462.

To sum up these authorities would be sufficient to sustain the proposition relied upon in this case by the accused, and definitely show error of material character on the part of the court in giving the charge criticised. The basic error and one which is fatal to this conviction from this viewpoint, is that the court omitted and failed to instruct the jury that they should view this case, first, from the defendants' standpoint, and, second, from the viewpoint of the conspiracy, and, third, in requiring the jury to believe that appellants would not be entitled to their rights of self-defense unless the two Echols and Fletcher did some act subsequent to the beginning of the difficulty between Hamilton and defendants by which they connected themselves with that difficulty. The theory of the defense was, and one that was basic to them, and one upon which they had a right to have the jury instructed, that Hamilton's acts were the acts of all, and it was the beginning of the execution of the threats made by all and the conspiracy entered into by them to take the lives of the appellants, either or both of them. The charge given was an elimination of the theory of conspiracy and the action of the parties in accordance with that theory.

2. The court charged the jury that if in defending against an un-

lawful attack, or that then reasonably appeared an unlawful attack, made upon either of the defendants by the said Hamilton, Price Echols, Bill Echols and C. L. Fletcher, or by any one or more of them, the said Bill Echols was accidentally shot by either of the defendants, then they would acquit both of the defendants. Objection was urged to this charge because there were no facts to sustain it. We are of opinion that this contention is correct. If there is any evidence to justify the belief that Bill Echols was accidentally shot we have overlooked it. The State's theory was that the defendants begun the difficulty by shooting Hamilton first and then shooting Echols and Fletcher every opportunity they had whenever they got in view of them. The jury may have reached the conclusion that the court did not believe the theory of conspiracy, and in charging that the shooting of Bill Echols may have been accidental, was a thrust at their belief and their view of the case. . Of course, if the shooting of Echols was accidental, it would tend to lead the mind to the conclusion that he was not in the conspiracy, of which appellant claims he formed a part. Bill Echols himself was shooting as testified by him on the witness stand.

3. Exception was reserved to the following charge: "If you should believe that the said Bill Echols was shot by the defendant, Shandra Johnson, if he was so shot, and you should further believe that the defendant, Clayton Black, was not a principal thereto, as the law of 'principals' has been hereinbefore defined to you, then you would acquit the said Clayton Black." The uncontradicted evidence is that Clayton Black or Shandra Johnson shot Bill Echols on the day of this difficulty. If Johnson shot Echols in order for Clayton Black to be guilty, the evidence must show that Black was a principal, and this was for the jury to ascertain. Both defendants were shooting at the alleged injured party, Bill Echols, and the testimony is undisputed as will be shown by the record. If the court, in charging with reference to this matter, has placed the burden upon defendant to show that he was not a principal, wherein it says if the jury should believe the defendant, Clayton Black, was not a principal, that is not correct. They could not convict Clayton Black of being a principal unless the testimony should show this beyond a reasonable doubt. It did not devolve upon appellant to show that he was not a principal. It devolved upon the State to show that he was, and the jury did not have to believe he was not a principal in order to acquit. In order to convict, they must believe he was a principal.

4. The same charge was given in almost the same language with reference to the defendant, Shandra Johnson, and requires the jury to believe that he was not a principal. The same objections apply to this as to the previous charge. These two charges shift the burden of proof from the State to the defendants, and we are of opinion they injected into the case an issue that was not raised by the evidence. The theory of defendants from beginning to end is that they were acting in self-defense; that the lives of both of them were threatened by the four

men who engaged with them in the deadly conflict armed with shot-guns, rifles and six-shooters, and that they were acting against this conspiracy and threat to take their lives, whereas the four alleged injured parties contend that the two appellants brought on the difficulty and forced the fight. These issues were sharply drawn. Appellants' basic theory of the proposition from beginning to end of this difficulty was that they were fighting four men armed with deadly weapons who had threatened to take their lives, and had conspired to do so, and had come to town for that purpose, and had put Hamilton forward to bring on the difficulty, and that he did bring it on, and the others immediately began shooting when the fight opened. That they were ready for it, and came to town armed for that express purpose. These are the contending theories in this case from beginning to end as we understand the record that is now before us.

5. It is also contended that the court was in error, as urged in their motion for new trial, in failing to instruct the jury with reference to what constituted a conspiracy under the facts of this case, and in not charging affirmatively that if from the evidence the defendants believed that there was a conspiracy between the said Price Echols, Bill Echols, C. F. Fletcher and Jim Hamilton, and any other persons to kill defendants or inflict upon them serious bodily injury, and that the said defendants had under the circumstances, as viewed from their standpoint, reason to believe and did believe that the said four parties were together on the day of the difficulty for the purpose of killing defendants or of inflicting upon them serious bodily injury; that they were lying in wait to get the advantage of defendants to do them injury, that the defendants would have the right to protect themselves against such threatened danger, and would not be required to wait until a gun was drawn and fired, but would have a right to act upon appearances, and if under such circumstances, viewed from the standpoint of the defendants, these acts were such as to create in the mind of the defendants a reasonable apprehension or fear of death or serious bodily injury, they would have a right to anticipate such attack, and if necessary, shoot first. The substance of this contention is what has been heretofore discussed in this opinion. If under the circumstances enumerated in the contention above set forth it was believed by the defendants under the circumstances of this case to exist, or the appearances were such as to make them believe that the parties were about to execute their threats, any act on the part of anyone of them that would· show to defendants' minds, or make them believe that the threatened attack was then begun and the threatened conspiracy was then to be executed, would authorize them to shoot and defend themselves against any or all of the parties. We understand that to be the law clearly and without question.

6. The court instructed the jury with reference to adequate cause, that a serious personal conflict in which great injury is inflicted was adequate cause. It is contended that the court was in error in this

because there was no serious personal conflict, and the court was of the impression, and conveyed to the jury his impression, that there was a serious personal conflict in which great injury was inflicted, and unless this was so, adequate cause was not in the case, or at least the court made this the ground of adequate cause. There was evidently very serious injury inflicted upon Shandra Johnson, because one of his eyes was shot out. There was quite serious injury inflicted upon the two Echols because they were both shot, and the injury upon Hamilton might also be said to be serious, because he was shot through the right arm with a rifle ball. But this was after the fight begun, and it was then at the height of its most deadly character; five parties at least fighting with shotguns and rifles, Hamilton, the sixth man, having fled the contest. If there was adequate cause, it was prior to the time that either one of them was shot. The adequate cause must exist as a reason why the mind was disturbed beyond cool reflection as the cause of the difficulty or extenuation of appellants' act in shooting if it otherwise had been murder or assault to murder.

7. There was a bill of exceptions reserved to the introduction of certain testimony. In this connection the bill recites that appellants' contention was that a conspiracy had been entered into between the Echols, Fletcher and Hamilton, and that the parties to the conspiracy entered into it for the purpose of taking the lives of the defendants, and on the morning of the shooting these parties came to the town of Coahoma heavily armed and all together where the defendants resided and where the defendants were at work; that it appeared to defendants that said conspirators were about to carry out the conspiracy to take the lives of the defendants, and in order to show the different motives on the part of the injured parties the following testimony was offered:

"Question to Price Echols by Mr. Cunningham, special prosecutor for the State: 'For what purpose did you go to the bank at Coahoma on the morning of the shooting?' It was not shown that the defendants, or either of them, knew for what purpose the witness had gone to Coahoma and whereupon the defendants, in open court, objected upon the ground that said question and any answer that the witness might make thereto was immaterial and irrelevant and could not bind the defendants because they had no knowledge of the purpose for which the witness had gone to the bank at Coahoma on the day of the shooting. To all of which the objections the court then and there overruled and permitted the witness to answer: 'I was an officer of the bank and went there to make out a report.'" While the objections were reserved as stated, the court explained this by stating "the evidence showed that the bank, of which Price Echols was president, and the Johnson hardware store, in which the defendants were at the time of the shooting, both situated on the north side of the railroad in Coahoma, and joined each other; that Echols, Fletcher and Hamilton all lived south of said railroad; that both of said defendants had been working in said Johnson store for sometime; that with the exception of a few minutes, Price

Echols was in said bank from the time he reached Coahoma at about 8:30 that morning until he started home and crossed to the south side of the railroad a little after 12 o'clock; that at the time the defendants began shooting the said Price and Bill Echols, Hamilton and Fletcher were all on the south side of the railroad, and preparing to leave town for home. In the opinion of the court, the witness had the right to explain why he went to the bank that morning by stating that he was president of it and went there on business, especially after defendants had proved that witness brought a Winchester to town with him; and had the right to be in said bank attending to business, they having seen him in the bank several times that morning. The court ruled: 'Further than that he went there on business for the bank, why I will not permit them to go into details.'"

Upon another trial we think this testimony should be excluded. To go into a discussion of this matter would require some lengthy statement and reasons why it should not be admitted. If Price Echols and Hamilton carried their guns into the bank on a peaceful mission they had not notified appellant of that fact, and their peaceful purpose in carrying the guns, if it existed, was unknown to appellants. Upon another trial this testimony should be rejected. However, if the State relied on this as evidence to rebut proof of conspiracy, it was admissible.

From what has been said in this opinion as to the view this court takes of the case and how it should be tried, we deem it unnecessary to take up the various other questions suggested for revision. We will say, in a general way, there was lot of details, facts and circumstances introduced in evidence in the absence of the defendants that ought not to have gone to the jury. While it is correct any fact or circumstance which tends to show the ill feeling between the parties that led to this difficulty or the motives that induced it, or the feeling of the various parties toward each other, might be admissible, yet some of this testimony was but expressions in the absence of the appellants to be affected by it, and it took a very wide range and sometimes going into details about matters. It is not the purpose of this opinion to take up those questions seriatim and discuss them except in this general way. These remarks will suggest to the court that only those matters should be permitted to go to the jury which bear upon the question of motive, malice or reasons that actuated the parties on either side in doing what they did do, without going too far into the different transactions.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Rehearing denied April 3, 1912.—Reporter.]