FILED IN
COURT OF CRIMINAL APPEALS

July 20, 2015

ABEL ACOSTA, CLERK

PD-0257-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/17/2015 4:53:32 PM
Accepted 7/17/2015 4:59:19 PM
ABEL ACOSTA
CLERK

No. PD-0257-15

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS


GREGORY SHAWN HENLEY, Appellant

v.

THE STATE OF TEXAS, Appellee

Appeal from Tarrant County

\* \* \* \* \*

**STATE'S BRIEF ON THE MERITS**

\* \* \* \* \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No.13803300

JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT

*The parties to the trial court's judgment are the State of Texas and appellant, Gregory Shawn Henley.

*The case was tried before the Honorable Jamie Cummings, Presiding Judge of County Criminal Court No. 5 of Tarrant County, Texas.

*Counsel for Appellant at trial was Cody Lee Cofer and Lauren R. Crisera, 111 N. Houston, Fort Worth, Texas 76102.

*Counsel for Appellant on appeal is William S. Harris, 307 West Seventh Street, Suite 1905, Fort Worth, Texas 76102.

*Counsel for the State at trial was Kris B. Krishna, former Assistant Criminal District Attorney, and Christopher B. McGregor, Assistant Criminal District Attorney, 401 W. Belknap St., Fort Worth, Texas 76196.

*Counsel for the State on appeal was Debra Windsor, Assistant Criminal District Attorney, 401 W. Belknap St., Fort Worth, Texas 76196.

*Counsel for the State before this Court is John R. Messinger, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUE PRESENTED.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Is a person justified in using force against another to prevent an absent third party from possibly using unlawful force in the future?**

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    **I.**    **Law**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        *Entitlement to defenses generally*.. . . . . . . . . . . . . . . . . . . . . . . . . . 13

        *Defense of a third person*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            "The other". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            "Immediately necessary". . . . . . . . . . . . . . . . . . . . . . . 17

            "Unlawful force". . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    **II.**    **Application**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        *Douglas and his ex-stepson were not there*. . . . . . . . . . . . . . . . . . . 21

        *Brandy did not use any force*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        *General fear of future harm is not enough*.. . . . . . . . . . . . . . . . . . 22

        *Appellant created his own justification*. . . . . . . . . . . . . . . . . . . . . 24

        *The concurring opinion offers no support*. . . . . . . . . . . . . . . . . . . 25

        *Necessity cases are illustrative*.. . . . . . . . . . . . . . . . . . . . . . . . . . . 26

            *Dewalt v. State*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

            *Schier v. State*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    **III.**    **Conclusion**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# INDEX OF AUTHORITIES

**Cases**

*Black v. State*, 145 S.W. 944 (1912). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Boget v. State*, 74 S.W.3d 23 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . . 15

*Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991). . . . . . . . . . . . . . . . . 18

*Brazelton v. State*, 947 S.W.2d 644 (Tex. App.–Fort Worth 1997, no pet.) . . . . . 19

*Cadle Co. v. Lobingier*, 50 S.W.3d 662 (Tex. App.–Fort Worth 2001). . . . . . . . . 20

*Cannan v. Green Oaks Apts., Ltd.*, 758 S.W.2d 753 (Tex. 1988). . . . . . . . . . . . 20

*Clinton v. State*, 354 S.W.3d 795 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . 17

*Dewalt v. State*, 307 S.W.3d 437 (Tex. App.–Austin 2010, pet. ref'd). . . 18, 26-28

*Dickey v. State*, 22 S.W.3d 490 (Tex. Crim. App. 1999). . . . . . . . . . . . . . . . . . 16

*Dobbs v. State*, 434 S.W.3d 166 (Tex. Crim. App. 2014) . . . . . . . . . . . . . . . . . 19

*Ex parte Dolenz*, 893 S.W.2d 677 (Tex. App.–Dallas 1995, no pet.). . . . . . . . . . 20

*Dyson v. State*, 672 S.W.2d 460 (Tex. Crim. App. 1984). . . . . . . . . . . . . . . . . . 15

*Easley v. State*, 424 S.W.3d 535 (Tex. Crim. App. 2014). . . . . . . . . . . . . . . . . 12

*Ferrel v. State*, 55 S.W.3d 586 (Tex. Crim. App. 2001). . . . . . . . . . . . . . . . . . 13

*Hamel v. State*, 916 S.W.2d 491 (Tex. Crim. App. 1996). . . . . . . . . . . . . . . . . 15

*Harbison v. McMurray*, 158 S.W.2d 284 (Tex. 1942) (op. on reh'g). . . . . . . . . . 21

*Henley v. State*, 454 S.W.3d 106 (Tex. App.–Fort Worth 2014). . . . . 22, 24-25, 30

*Hughes v. State*, 719 S.W.2d 560 (Tex. Crim. App. 1986) (en banc). . . . . . . . . . 14

*Macias v. State*, 13-13-00319-CR, 2015 Tex. App. LEXIS 2319
(Tex. App.–Corpus Christi Mar. 12, 2015) (mot. for r'hng filed). . . . . . . . 16

*Merritt v. State*, 05-10-01008-CR, 2012 Tex. App. LEXIS 2382 (Tex.
App.–Dallas Mar. 27, 2012, pet. ref'd) (not designated for publication). . 20

*Murkledove v. State*, 437 S.W.3d 17 (Tex. App.–Fort Worth 2014). . . . . . . . . . 18

*Ex parte Rhodes*, 974 S.W.2d 735 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . 21

*Schier v. State*, 60 S.W.3d 340 (Tex. App.–Houston [14th Dist.] 2001,
pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 28-29

*Shaw v. State*, 243 S.W.3d 647 (Tex. Crim. App. 2007). . . . . . . . . . . . . 13-14, 30

*Ex parte Taylor*, 28 S.W. 957 (Tex. Crim. App. 1894). . . . . . . . . . . . . . . . . . . 30

*Walters v. State*, 247 S.W.3d 204 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . 12

**Statutes and Rules**

TEX. FAM. CODE § 101.032(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TEX. PENAL CODE § 1.07(a)(48) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TEX. PENAL CODE § 2.03(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

TEX. PENAL CODE § 9.22. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

TEX. PENAL CODE § 9.31(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

TEX. PENAL CODE § 9.31(b)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TEX. PENAL CODE § 9.32(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TEX. PENAL CODE § 9.33. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TEX. R. EVID. 404(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Other**

BLACK'S LAW DICTIONARY (Special Deluxe 5th ed. 1979)................ 19-21

RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE
  (Unabridged ed. 1971). ....................................... 17

No. PD-0257-15

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

GREGORY SHAWN HENLEY,                                   Appellant

v.

THE STATE OF TEXAS,                                        Appellee

\* \* \* \* \*

**STATE'S BRIEF ON THE MERITS**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through its State Prosecuting Attorney, and respectfully presents to this Court its brief on the merits.

**STATEMENT OF THE CASE**

Appellant was convicted of assault (family violence) and sentenced to 200 days in county jail.[1] The court of appeals reversed, holding that the exclusion of appellant's testimony and denial of related cross-examination regarding why he assaulted his ex-wife prevented him from presenting his defense—defense of a third person.

---

[1] 1 CR 30.

1

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument was requested but not granted.

## ISSUE PRESENTED

**Is a person justified in using force against another to prevent an absent third party from possibly using unlawful force in the future?**

## STATEMENT OF FACTS

The victim, Brandy Gillingham (Brandy), is appellant's ex-wife.[2] Their two sons lived with appellant while their permanent custody case was pending.[3] On March 3, 2012, Brandy went to his house to pick up their children for her weekend visitation.[4] Her visitations were ordered by the SAPCR court to be supervised by her mother or father.[5] Her mother went with her, as required.[6]

Appellant was waiting for them and approached as they pulled up curbside.[7]

---

[2]   5 RR 62.

[3]   5 RR 80.

[4]   5 RR 63.

[5]   5 RR 80, 83-84. "SAPCR" stands for "Suit Affecting the Parent-Child Relationship." *See* TEX. FAM. CODE § 101.032(a) ("'Suit affecting the parent-child relationship' means a suit filed as provided by this title in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is requested.").

[6]   5 RR 45, 63.

[7]   5 RR 46.

He said he wanted to talk.[8]  Neither Brandy nor her mother wanted to "because he tends to get irate."[9]  Brandy's mom did not know exactly what he wanted to talk about, but he was angry.[10]  Brandy did not recall what he was trying to talk about, but he said he would not give her the kids "because he wanted his questions answered."[11]

After appellant twice refused to get the children, Brandy called 911.[12]  He became more and more agitated but went to get the children.[13]  Brandy, still on the phone, stood outside the vehicle as appellant placed the boys inside.[14]  She still wanted to make a complaint and was instructed to stay there until an officer arrived.[15]  Brandy ended her call to 911 after she told the operator that appellant placed the children inside, but appellant still wanted to talk to either her or her mother.[16]  By that

---

[8]  5 RR 63, 81.

[9]  5 RR 46, 63.

[10]  5 RR 60.

[11]  5 RR 46, 81, 84.

[12]  5 RR 63-64.

[13]  5 RR 47, 81.

[14]  5 RR 47, 64, 82.

[15]  5 RR 65.

[16]  5 RR 47.

point, Brandy was sitting inside the car with the window rolled up.[17] Appellant got upset and "snapped off" the handle when he tried to open Brandy's door.[18]

When Brandy opened the door to retrieve the handle, appellant pulled her out by her ponytail.[19] Brandy had not hit appellant or made any like motions.[20] He "proceeded to get on top of her, holding her down with his knees probably against her shoulders so she couldn't wiggle out and just started beating her face."[21] The bruising was severe.[22] He also grabbed both sides of her head and banged it against the concrete, "like her head was bouncing on the grass and the concrete sidewalk."[23]

After appellant had backed off, he got on his phone with someone, got in his vehicle, and left before the police showed up.[24]

After Brandy testified and outside the jury's presence, she was asked to

---

[17]  5 RR 65, 83.

[18]  5 RR 48, 65, 83.

[19]  5 RR 48, 67.

[20]  5 RR 52.

[21]  5 RR 48, 67.

[22]  *See* State's Exhibits 7-11 (day of the attack); 13 & 14 (the next morning); 12 & 15 (March 5, two days after the assault); 16 & 17 (March 11).

[23]  5 RR 52-53, 68.

[24]  5 RR 51, 70.

4

elaborate on the reason her visitations had to be supervised.[25]  She explained that one of her sons had made an allegation of physical abuse against Douglas Gillingham (Douglas) her then-fiancé.[26]  One of the boys accused him of strangling him in August of 2011.[27]  Appellant reported the allegation to Child Protective Services, which investigated and found the allegation to be not true.[28]  However, the investigation led CPS to discover that Douglas's ex-stepson had sexually abused the boys while in Brandy's care.[29]  Brandy maintained that the boys never told her about the abuse and that she was unaware of it until told by CPS.[30]  The ex-stepson was adjudicated and placed on probation,[31] and a court prohibited contact between the boys and the ex-stepson.[32]  The SAPCR court also ordered Brandy to stop dating Douglas, but she violated the order and lied to the SAPCR court about living with him.[33]  If she violated the resulting supervision order, and allowed Douglas to be near her children,

---

[25]   5 RR 86.

[26]   5 RR 86.  Brandy married Douglas shortly after the assault.  5 RR 89.

[27]   5 RR 90.

[28]   5 RR 90, 94, 97-98.

[29]   5 RR 87, 94, 96-97.

[30]   5 RR 94-95.

[31]   5 RR 94.

[32]   5 RR 89.

[33]   5 RR 86-87.

she could have lost custody of them.[34]

Brandy agreed that appellant was aware of her lie to the SAPCR court.[35] And, although she maintained that she did not know what appellant might have been trying to tell her that morning, she agreed he acted as though he assumed the boys would not be safe with her.[36]

Appellant also testified outside the presence of the jury for the limited purpose of allowing the trial court to consider its evidentiary ruling.[37] A week or so prior to the assault, one of his sons told him new allegations against the ex-stepson from that previous summer.[38] That son also confirmed what the other son had always said, which was that Brandy knew about the abuse.[39]

Appellant also described how the boys had told him about Douglas strangling them, and how Brandy "denied it like everything else."[40] He agreed that all of that experience with Brandy, Douglas, and the ex-stepson contributed to his motivation

---

[34]    5 RR 93.

[35]    5 RR 87-88.

[36]    5 RR 85.

[37]    5 RR 104.

[38]    5 RR 107.

[39]    5 RR 107-08.

[40]    5 RR 109-10.

to assault Brandy.[41] When she arrived to pick up the boys, appellant tried to tell her what he had learned the week before but she dismissed it.[42] Brandy's mother ignored it, too.[43] This "contribute[d] to [my] belief that they were going to put [my] boys in a dangerous situation."[44] Appellant agreed with counsel that he felt that if Brandy took his sons that they "would be in imminent danger" and that she would be placing them "in a dangerous condition."[45] Appellant was concerned about Brandy "putting them back in the situation that they found themselves in in August of 2011."[46] He believed she intended to violate the court order intended to prevent that from happening.[47]

The trial court held five hearings, from pre-trial[48] to the close of evidence, regarding the admissibility of this testimony. Appellant offered various theories.

His primary theory was that it was central to his defense—defense of a third

---

[41]    5 RR 110.

[42]    5 RR 111.

[43]    5 RR 112.

[44]    5 RR 112.

[45]    5 RR 105-06.

[46]    5 RR 106.

[47]    5 RR 106-07.

[48]    Before voir dire, the trial court addressed the State's motion in limine regarding and misconduct by Douglas Gillingham. 3 RR 6 (there is no motion in the clerk's record).

person. "[T]he abuse and the alleged abuse at the time that Douglas Gillingham perpetrated on my client's two sons is relevant, because it is the basis of my client's fear for his children's safety in that . . . my client believed she was taking the children to Douglas Gillingham's house."[49]  Brandy's "dismissive nature . . . at the scene" when appellant confronted her immediately prior to his assault "goes into his belief that his children were being put in harm's way."[50]  "[T]he children have reported that Brandy did not follow the court order [and] continued to live with Douglas."[51]  "I think that creates a legitimate concern for the safety of these kids, and her lying [previously] to the [SAPCR] Court creates a legitimate concern about her following the court orders."[52]  "The imminent threat . . . of unlawful force was Brandy taking the kids in violation of the court order and in putting them in a dangerous situation. Her level of complicity, we don't know."[53]  "[W]hether any of it is true or not, if [appellant] believed that all of these circumstances took place, and that is the reason that he chose to act the way he did, I mean, that is a gravamen of defense of a third

---

[49]  4 RR 8.

[50]  4 RR 12-13.

[51]  4 RR 12.

[52]  5 RR 99-100.

[53]  5 RR 120.

8

person or self-defense."[54] "[A]ll of this goes to the reasonableness of my client and the actions that he took to keep her from taking these children away."[55] If appellant could not testify to these facts, then he would not testify and "we will not have a defense."[56]

His second theory was that "under [Rule of Evidence] 404(a)(2), Brandy's character as a mother in putting her children in harm's way is a pertinent character trait that relates specifically to defense of a third person, defense of these children."[57]

His third theory was that Brandy and her mother had opened the door by claiming that he was generally irate, and so he should be able to explain that he was irate due to abuse his sons suffered while in her care.[58]

Fourth, appellant argued that Brandy's "selective amnesia" when asked about appellant's attempts to talk to her that day could not be fully cross-examined without being able to ask her specific questions about these matters.[59]

---

[54] 3 RR 10.

[55] 5 RR 116.

[56] 5 RR 121, 124.

[57] 4 RR 10-11. After the Rules were reorganized, the applicable citations is TEX. R. EVID. 404(a)(3) ("In a criminal case, subject to the limitations in Rule 412, a defendant may offer evidence of a victim's pertinent trait . . . .").

[58] 5 RR 102-03.

[59] 4 RR 28.

9

Finally, defense counsel added, "Of course, the sexual allegations that give my client a pretty substantial leg up in the child custody matter. And an assault family violence sort of levels the playing field, and the jurors should be made aware of those two factors of play in the credibility of witnesses that have testified."[60]

The State explained that allegations against Douglas and his ex-stepson were irrelevant or otherwise inadmissible under Rule 403.[61] First, Douglas was not even there when the assault occurred.[62] Second, the allegations against Douglas and his ex-stepson are too remote to be relevant to justify an assault that occurred on March 3, 2012, and there were no allegations of any more recent conduct or reported violations of the SAPCR court's orders since the previous fall.[63] Third, if the triggering event were appellant's discovery of additional information the week prior, there would still be no immediacy justifying the assault.[64] "When we talk about defense of third person, there has to be the immediate and necessary intervention. One week prior is not immediate, Your Honor. He had plenty of time to intervene if

---

[60]   5 RR 122.

[61]   3 RR 7-8; 4 RR 7.

[62]   4 RR 7, 27.

[63]   4 RR 10-11, 5 RR 100.

[64]   5 RR 118.

10

he thought his children were in danger."[65]  Fourth, the conduct that occurred almost eight months prior, if relevant, would be substantially more prejudicial than probative.[66]  Fifth, if relevant to explain Brandy's potential motive to lie, the jury was already aware of the custody dispute.[67]

The trial court refused to admit the evidence.[68]

## SUMMARY OF THE ARGUMENT

A person is justified in using force against another who reasonably appears to be using or attempting to use unlawful force against them and it is immediately necessary to do so.  One can step into the shoes of a third person and be justified under the same circumstances.  In this case, appellant claims he was entitled to an instruction on defense of a third person because he assaulted his ex-wife to prevent her from placing their sons around persons he believed had hurt them before.  He was not entitled to this defense because the fourth parties who allegedly posed the real threat were not present and his ex-wife was not using or attempting to use any force, unlawful or otherwise.  As a result, the trial court did not err by excluding the

---

[65]  5 RR 100.

[66]  4 RR 27-28.

[67]  5 RR 122.

[68]  5 RR 121-22.

evidence "supporting" his defense.

## **ARGUMENT**

The court of appeals reversed appellant's conviction based on the theory that the trial court's exclusion of evidence and related limitation on cross-examination prevented appellant from presenting his defense. Because the evidence, when viewed in the light most favorable to his defense, would not entitle him to it, the trial court was within its discretion to exclude evidence that was irrelevant and had the potential to be unfairly prejudicial.

## I. Law

A trial court's ruling on the exclusion or admission of evidence is typically reviewed for abuse of discretion and, if error is found, under a non-constitutional standard.[69] However, the issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting it,[70] and a clearly erroneous ruling that effectively prevents a defendant from presenting that defense is constitutional error.[71] Thus, the propriety of the court of appeals's holding turns on whether appellant was entitled to an instruction on defense of a third person.

---

[69] *Walters v. State*, 247 S.W.3d 204, 217-19 (Tex. Crim. App. 2007).

[70] TEX. PENAL CODE § 2.03(c).

[71] *Easley v. State*, 424 S.W.3d 535, 540 (Tex. Crim. App. 2014).

*Entitlement to defenses generally*

"If a defense is supported by the evidence, then the defendant is entitled to an instruction on that defense, even if the evidence supporting the defense is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible."[72] What it means to be "supported by the evidence" is the crux of the issue. The evidence is viewed in the light most favorable to the defendant,[73] but that does not mean, as defense counsel argued at trial, that "whenever [a defendant] says there is an immediate threat and that's the way that he's responding, that in and of itself, just in that conclusory statement, is some evidence to warrant the jury being charged on [defense of a third person]."[74]

The evidence presented must "support a rational inference" that each element of the defense is true.[75] This requirement "preserve[s] the integrity of the jury as the factfinder by ensuring that it is instructed as to a defense only when, given the evidence, that defense is a rational alternative to the defendant's criminal liability."[76] "If a jury were instructed as to a defense even though the evidence did not rationally

---

[72]   *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007).

[73]   *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

[74]   5 RR 120.

[75]   *Shaw*, 243 S.W.3d at 657-58.

[76]   *Id*. at 658.

13

support it, then the instruction would constitute an invitation to the jury to return a verdict based on speculation."[77] To prevent this, the trial court "must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven."[78] Whether its judgment was correct is a question of law.[79]

*Defense of a third person*

If permitted, appellant would have testified that he assaulted Brandy to protect his sons. "A person is justified in using force. . . against another to protect a third person if: (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 . . . in using force . . . to protect himself against the unlawful force . . . he reasonably believes to be threatening the third person he seeks to protect; and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person."[80] In essence, the Legislature places the accused "in the shoes of the third person."[81] Section 9.31 says "a person is justified in using force against another when and to the degree the actor reasonably

---

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] TEX. PENAL CODE § 9.33.

[81] *Hughes v. State*, 719 S.W.2d 560, 564 (Tex. Crim. App. 1986) (*en banc*).

14

believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force."[82] This includes the "right to defend from apparent danger to the same extent as he would had the danger been real; provided he acted upon a reasonable apprehension of danger as it appeared to him at the time."[83]

Appellant's entitlement depends on the definitions of "the other," "immediately necessary,"[84] and "unlawful force," none of which are defined by statute or by this Court.[85]

"The other"

As one court of appeals has recently stated, the language of the self-defense provisions "logically implies that 'the other' who uses or attempts to use unlawful force as indicated in subsection (a) of section 9.31 is 'the person against whom the

---

[82]   TEX. PENAL CODE § 9.31(a).

[83]   *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984); *see Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996) ("The term 'reasonably believes' in § 9.32 encompasses the traditional holding that a suspect is justified in defending against danger as he reasonably apprehends it.").

[84]   Defense of a third person actually requires two findings of immediate necessity—once when section 9.33(1) incorporates section 9.31, and again as an independent requirement in 9.33(2).

[85]   This Court has addressed "what it means to direct force 'against' another[,]" but did not define "another" in doing so. *Boget v. State*, 74 S.W.3d 23, 27 (Tex. Crim. App. 2002).

15

force was used.'"[86] This makes sense, as the presumption of reasonableness of the actor's belief is based, in part, on the actor's knowledge or reason to believe "that the person against whom" the force or deadly force was used was doing one or more enumerated acts.[87] Far and away, the most common claim of self-defense involves a defendant who harms someone he claimed was attacking or threatening him.

The only exception this Court has recognized is the so-called "multiple assailants" situation, in which an actor is justified in killing people who are "present at the time the difficulty is begun and in any way are encouraging, aiding or advising the real assaulting party and it so appears to the accused."[88] "The theory behind the multiple assailants charge is that, when it is clear that an attack is being conducted by multiple people as a group, a defendant is justified in using force against any member of the group, even if the recipient of that force is not engaging in conduct that would, by itself, justify the use of force (or deadly force as the case may be).[89] Thus, the "real assaulting party" must be present to justify the use of force against another who

---

[86]     *Macias v. State*, 13-13-00319-CR, 2015 Tex. App. LEXIS 2319 at *18 (Tex. App.–Corpus Christi Mar. 12, 2015) (pet. filed PD-0663-15) (not designated for publication).

[87]     TEX. PENAL CODE §§ 9.31(a)(1), 9.32(b)(1).

[88]     *Black v. State*, 145 S.W. 944, 947 (1912) (citations omitted).  The propriety of this non-statutory instruction is one of the issues raised in *Macias v. State*, PD-0663-15 (pending) ("1. Does the plain language of Texas Penal Code section 9.31(a), the self-defense statute, provide for the justified use of force against another who does not use or attempt to use unlawful force?").

[89]     *Dickey v. State*, 22 S.W.3d 490, 493 (Tex. Crim. App. 1999) (Keller, PJ., concurring).

16

is not using unlawful force.

<u>"Immediately necessary"</u>

Again, because self-defense cases almost always involve claims that the actor was being attacked or threatened by the person they harmed, there has been little need to define "immediately necessary." It is appropriate to resort to the dictionary to determine the common and ordinary meaning of its constituent parts.[90] "Immediately" means "without lapse of time; without delay; instantly; at once."[91] "Necessary" means "being essential, indispensable, or requisite."[92] When combined in context, "immediately necessary" suggests that the actor must reasonably believe there is no other way to protect against the use or attempted use of unlawful force than to use force at that moment.[93]

Cases dealing with the defense of necessity[94] are helpful. Conduct is justified by necessity if, *inter alia*, "the actor reasonably believes the conduct is immediately

---

[90]  *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011).

[91]  RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 712 (Unabridged ed. 1971).

[92]  *Id*. at 955.

[93]  It is thus unclear how the added requirement in section 9.33(2) that "the actor believes that his intervention is immediately necessary" could require any additional immediacy or necessity.

[94]  TEX. PENAL CODE § 9.22.

necessary to avoid imminent harm."[95] Although there is a real grammatical difference between "imminent harm" and "immediately necessary," and the Legislature is presumed to have intended different meanings,[96] overlap in application is unavoidable. It is difficult to imagine an imminent harm that does not create an immediate necessity to avoid it, or it being immediately necessary to avoid a harm that is not imminent. Not surprisingly, one is commonly defined by the other: "An 'imminent harm' occurs when there is an emergency situation and it is 'immediately necessary' to avoid that harm . . . ."[97]

As with entitlement generally, this element is not proved by the *ipse dixit* of the defendant. "[E]ven a defendant's sincere belief that his or her conduct is immediately necessary to avoid imminent harm is unreasonable as a matter of law if the undisputed facts demonstrate a complete absence of 'immediate necessity' or 'imminent harm' as those concepts are defined in the law."[98] This language was approved by the court of appeals in this case.[99]

---

[95]   TEX. PENAL CODE § 9.22(1).

[96]   *Boykin v. State*, 818 S.W.2d 782, 786 (Tex. Crim. App. 1991) ("It would be illogical to presume that the Legislature intended a part of the statute to be superfluous.").

[97]   *Schier v. State*, 60 S.W.3d 340, 343 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd).

[98]   *Dewalt v. State*, 307 S.W.3d 437, 454 (Tex. App.–Austin 2010, pet. ref'd).

[99]   *Murkledove v. State*, 437 S.W.3d 17, 25 (Tex. App.–Fort Worth 2014, pet. dism'd) (citing
(continued...)

18

<u>"Unlawful force"</u>

"Force" is not defined by the Penal Code. However, in the context of resisting arrest, this Court adopted the meaning "violence, compulsion, or constraint exerted upon or against a person or thing," and "violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm or death."[100] In short: "violence or physical aggression, or an immediate threat thereof."[101]

Additionally, the use or attempted use of force must be "unlawful." "Unlawful" is defined by the Penal Code, and "means criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege."[102] "Tortious" is not defined by the Penal Code, but Black's Law Dictionary defines it as "[w]rongful; of the nature of a tort."[103] In turn, "tort" is defined as, "A private or civil wrong or injury, other than breach of contract, for

---

[99](...continued)
*Dewalt*); *Brazelton v. State*, 947 S.W.2d 644, 648-49 (Tex. App.–Fort Worth 1997, no pet.) ("A defendant's belief that conduct was immediately necessary to avoid imminent harm may be deemed unreasonable as a matter of law, however, if undisputed facts demonstrate a complete absence of evidence of immediate necessity or imminent harm.").

[100]   *See Dobbs v. State*, 434 S.W.3d 166, 171 (Tex. Crim. App. 2014) (citations omitted).

[101]   *Id*.

[102]   TEX. PENAL CODE § 1.07(a)(48).

[103]   BLACK'S LAW DICTIONARY 1335 (Special Deluxe 5th ed. 1979).

19

which the court will provide a remedy in the form of an action for damages."[104]

"Three elements of every tort action are: Existence of legal duty from defendant to plaintiff, breach of duty, and damage as proximate result."[105] There are few criminal cases elaborating on this term. But one court of appeals held that filing a frivolous lawsuit is not tortious because, while there are sanctions available against that party, there is no independent tort cause of action for damages.[106]

Relevant to this case, the violation of a court's order is typically remedied through a civil contempt proceeding, the punishment for which may be a fine or imprisonment. Although both are for the benefit of the opposing party, the fines are not payable to that party[107]; rather, the object of such punishment is compliance with the order of the court.[108] Criminal contempt is also an option, although typically

---

[104] *Id.*

[105] *Id.*

[106] *Merritt v. State*, 05-10-01008-CR, 2012 Tex. App. LEXIS 2382 at * 6-7 (Tex. App.–Dallas Mar. 27, 2012, pet. ref'd) (not designated for publication).

[107] *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 669 (Tex. App.–Fort Worth 2001, pet. denied); *Ex parte Dolenz*, 893 S.W.2d 677, 680 (Tex. App.–Dallas 1995, original proceeding, no pet.).

[108] BLACK'S LAW DICTIONARY at 223. In fact, the Texas Supreme Court noted that it had "earlier held that in a contempt proceeding a private party cannot recover damages for a violation of a court order," even with an independently pleaded cause of action, but did not have to address it. *Cannan v. Green Oaks Apts., Ltd.*, 758 S.W.2d 753, 754 (Tex. 1988), citing *Edrington v. Pridham*, 65 Tex. 612 (1886).

reserved for "an act done in the presence of the court."[109] Moreover, the Texas Supreme Court has held that a criminal contempt proceeding arising out of a civil case is a civil matter.[110] This Court has adhered to this holding but not addressed its merits.[111] As such, it is unclear whether criminal contempt in a civil case is "unlawful" for the purposes of the Penal Code.

## II. Application

Viewed in the light most favorable to appellant, he believed that his use of force against Brandy was immediately necessary to protect his sons from abuse by Douglas and his ex-stepson, which he believed would occur if Brandy were allowed to leave. There are two possible ways to view this, but neither justify his actions.

*Douglas and his ex-stepson were not there*

If the threat posed was abuse by Douglas and his ex-stepson, appellant fails for four related reasons. First, they could not have been using any unlawful force against anyone because they were not there. Second, and for the same reason, there is not even a conceivable "multiple assailants" situation applicable to Brandy. Third, if Brandy could be made responsible for their actions, any potential use of force by

---

[109] BLACK'S LAW DICTIONARY at 336.

[110] *Harbison v. McMurray*, 158 S.W.2d 284, 288 (Tex. 1942) (op. on reh'g).

[111] *Ex parte Rhodes*, 974 S.W.2d 735, 740 & n.14 (Tex. Crim. App. 1998).

them in the future was purely speculative and cannot be saved by the "apparent danger" construct. Fourth, and as a result, appellant beat the wrong person.

*Brandy did not use any force*

Basing the defense on Brandy's conduct is similarly unavailing. There is no evidence Brandy was using or attempting to use any physical force against her sons. Nor was there an allegation that Brandy would use force against them at some future time. Rather, it was the mere act of leaving which formed the basis for reversal.[112] Although her departure was apparently not imminent, as it was her intention to wait for police and make a report, appellant could have believed it was and so intervention, if justified, was immediately necessary. But pulling away from a curb, without more, is not "violence or physical aggression, or an immediate threat thereof," even if violating the SAPCR court's order by driving to Douglas's house would have been "unlawful."

*General fear of future harm is not enough*

Without saying so, the court of appeals combined these two theories, thereby making Brandy globally responsible for what fourth parties might do in the future.

---

[112] *Henley v. State*, 454 S.W.3d 106, 116 (Tex. App.–Fort Worth 2014) ("The danger that Appellant perceived lay in the children's leaving his home with Brandy. That perceived danger was immediate.").

22

This was the basis for appellant's Rule 404 argument.[113]   But being a bad mother is not using "force"; the broad allusion to harm has to be connected to a specific, concrete threat posed by Douglas and his ex-stepson, and there is no meaningful way to characterize that as "immediate."   If this bare "but/for" relationship between Brandy's only present action and some actually unlawful force that might follow in the future were sufficient to merit an instruction on self-defense, everyone would be entitled to it based on their say-so.

*Appellant created his own justification*

Moreover, appellant's actions, if otherwise justified, were immediately necessary only because he placed the children in Brandy's car.  Everything that he claims justified his belief—history of past abuse, new allegations of past abuse with Brandy's awareness, Brandy's dismissiveness in the past and that day—was known to appellant before he placed his sons in her care.  In fact, except for her reaction that day, which did not surprise appellant, it was known to him a week prior when it was revealed in counseling by his sons.  That fact alone should prevent a rational jury from concluding that appellant reasonably believed this beating was immediately necessary.  If the triggering event was Brandy's imminent departure, no rational juror would find that appellant did not provoke her leaving with the children by doing the

---

[113]   4 RR 10-11.

23

one thing that made it possible.[114]

*The concurring opinion offers no support*

None of the points raised separately by Justice Gardner in her concurrence support the court's holding.

First, she pointed out that "evidence of past violent acts against the defendant is an established method of proof in self-defense cases, because the law recognizes the fact that future conduct may be reasonably inferred from past conduct."[115] Applied here, appellant's knowledge of, or belief in, past violent acts by Douglas or his ex-stepson could have merited a justification defense against them. But it would not justify beating Brandy under the circumstances presented.

Second, Justice Gardner pointed out that "a person has the right to defend himself from 'apparent danger' to the same extent as he would if the danger were real."[116] But "apparent danger" is not a license for a defensive instruction based on a defendant's imagined future scenarios involving people who are not there. There is still a threshold reasonableness inquiry. Otherwise, a defendant would control entitlement based upon his declared view of the evidence, and the trial court would

---

[114] *See* TEX. PENAL CODE 9.31(b)(4).

[115] *Henley*, 454 S.W.3d at 119 (Gardner, J., concurring) (citing *Fielder v. State*, 756 S.W.2d 309, 319-20 (Tex. Crim. App. 1988)).

[116] *Id*.

be powerless to preserve the integrity of the jury.

Third, that opinion says the trial court "did not credit Appellant's testimony and did not view the evidence in the light most favorable to Appellant but, instead, weighed the credibility of Appellant's proffered testimony, itself, and concluded that it was simply not credible that there was any immediate danger to the children and no reasonable basis for Appellant to believe that there was."[117] Only the last part of this statement is accurate. Nothing in the record indicates that the trial court did not take appellant's testimony at face value. Rather, the trial court determined that, appellant's sincere belief notwithstanding, no past allegations or newly discovered information regarding Douglas and his ex-stepson's conduct, or Brandy's failure to take it seriously, could rationally justify the assault. Again, if a defendant's opinion that he is justified is a matter of credibility rather than law, the trial court has no role to play and *Shaw*'s requirement that it determine the rationality of the defense should be overruled.

*Necessity cases are illustrative*

Two necessity cases cited above, *Dewalt* and *Schier*, serve to illustrate the unavailability of justification and the dangers of extraneous prejudicial information in similar domestic situations.

---

[117] *Id*. at 121.

*Dewalt v. State*

After a jury granted sole managing conservatorship to her husband, Michael,
Dewalt fled to Mexico with their child.[118] At her aggravated kidnaping trial, Dewalt
proffered evidence that she was a "protective mother" and alleged that Michael and
two adult cousins had repeatedly physically and sexually abused her child the year
before.[119] The evidence that she claimed supported her reasonable belief that fleeing
with her child was "immediately necessary" to avoid "imminent harm" included that
Michael had not been permitted unsupervised visitation since the abuse allegations
surfaced.[120] She also said this testimony rebutted the State's evidence of her intent.[121]
The State argued that, unless Dewalt could raise a necessity defense, any evidence
regarding alleged abuse would be irrelevant and extremely prejudicial.[122]

The court permitted evidence that Dewalt had sued to terminate Michael's
parental rights based on allegations that he had "physically endangered" their child

---

[118]   *Dewalt*, 307 S.W.3d at 441-42.

[119]   *Id*. at 447.

[120]   *Id*. at 448, 455.

[121]   *Id*. at 449.

[122]   *Id*. at 447.

26

that were of a nature that would cause a "protective mother" great concern.[123]

However, the court continued to exclude any testimony delving into the specific nature or details of the alleged "physical endangerment."[124] Dewalt was also denied an instruction on necessity.[125] Dewalt claimed on appeal that the trial court's exclusion of the evidence prevented her from mounting a defense.[126]

The court of appeals rejected these claims. With regard to admissibility generally, it held:

> In contrast to what is at best limited probative value in controverting the State's allegations of specific intent, the factors weighing against admission of Dewalt's evidence going to her professed motive to 'protect her son'--especially sensational details of the alleged abuse--were high. Evidence of sexual abuse, especially allegations of such abuse perpetrated by a parent on a child, is extremely prejudicial. . . . [T]his evidence would have interjected into trial an emotionally charged set of collateral issues with great potential to confuse and mislead the jury. And once those issues were placed before the jury, . . . it would be necessary to essentially re-try the issues in the child-custody case, . . . . further confusing and distracting the jury from the issues that properly control under the applicable law.[127]

Relying heavily on *Shaw*, it also concluded "that the district court did not err in determining that, as a matter of law, she failed to present legally sufficient

---

[123] *Id*. at 449.

[124] *Id*.

[125] *Id*.

[126] *Id*. at 450-51.

[127] *Id*. at 453 (internal citations omitted).

evidence that she 'reasonably believed' kidnapping [her child] was 'immediately necessary' to avoid 'imminent harm.'"[128]  It was undisputed that, at the time the jury decided custody against her, the child was in San Antonio, a half-hour or more drive from the courthouse.[129]  "Whatever threat of harm that Michael could have presented to [the child] from Dewalt's perspective was not something that was going to happen now."[130]

## *Schier v. State*

Schier had scheduled visitations with his daughter, who lived with her mother.[131]  One day, Schier picked his child up for the weekend and kept her until he was arrested for interference with child custody eight months later.[132]  Schier complained that the trial court's exclusion of his testimony regarding the reasons for his actions harmed him because, without it, he could not meet the submitted defense of necessity.[133]  Schier's proffered testimony included allegations that his daughter's mother abused drugs and alcohol, was often incoherent as a result, and drove drunk

---

[128]  *Id*. at 453-54.

[129]  *Id*. at 455.

[130]  *Id*. (citation and quotations omitted).

[131]  *Schier*, 60 S.W.3d at 342.

[132]  *Id*.

[133]  *Id*.

with their daughter in the car.[134]  Worse, his daughter told him that she had witnessed

domestic violence at her mother's house and was afraid when she was there.[135]  And,

after her last visit, Schier noticed problems with frequent urination and began taking

his daughter to a therapist.[136]  He was told by a school nurse that it could indicate

sexual abuse.[137]    The court of appeals affirmed, holding that the evidence could

have been properly excluded as irrelevant to a necessity defense:

> The environment appellant sought to avoid for his daughter, if accurately portrayed, is deplorable and would make it extremely difficult for any child to endure or survive unharmed.  We agree that such conditions (again, assuming the truth thereof) present a substantial likelihood of lasting psychological harm.  However, none of the above testimony makes it any more or less likely that there was an emergency situation, 'on the point of happening,' which required appellant to act immediately.  The harmful events about which appellant testified cannot be made imminent through his failure to take legally appropriate action sooner rather than later.[138]

## III.  Conclusion

Although trial courts should err on the side of caution when considering a

requested defensive instruction, they retain a duty to prevent irrational verdicts based

on speculation.  "[T]he law of self-defense . . . has well-defined limitations, marked

---

[134]  *Id*. at 343.

[135]  *Id*. at 343-44.

[136]  *Id*. at 344.

[137]  *Id*.

[138]  *Id*. (citation omitted).

out by human experience. Thus this right can not be invoked by the fears of the person defending, but the law requires that there must be a reasonable appearance of danger to call it into exercise."[139] To this end, the trial court "must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven."[140] Even when viewed in the light most favorable to appellant, no rational jury would find that beating your ex-wife because she might later place your children near someone who you believe injured them the previous summer is justifiable.

The trial court did not abuse its discretion by excluding the proffered testimony because it was irrelevant to an instruction on defense of a third person. Because the court of appeals based its reversal on a single harm analysis covering both this alleged error and the alleged denial of appellant's right to cross-examine on the same general topic,[141] remand is appropriate so that it may reconsider the confrontation claim in light of his lack of entitlement to the defense.

---

[139] *Ex parte Taylor*, 28 S.W. 957, 957 (Tex. Crim. App. 1894).

[140] *Shaw*, 243 S.W.3d at 658.

[141] *Henley*, 454 S.W.3d at 117 ("Just as the trial court's errors of excluding Appellant's testimony justifying his actions and preventing him from cross-examining Brandy and her mother about the bases for his actions and his state of mind overlap, so does the harm caused by both errors.").

## **PRAYER FOR RELIEF**

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals reverse the judgment of the Court of Appeals.

Respectfully submitted,

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the WordPerfect word count tool this document contains 7,603 words.

/s/ John R. Messinger
John R. Messinger
Assistant State Prosecuting Attorney

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 17th day of July, 2015, a true and correct copy of the State's Brief on the Merits has eFiled or e-mailed to the following:

Debra Windsor
Assistant Criminal District Attorney
401 W. Belknap St.
Fort Worth, Texas 76196
Dwindsor@tarrantcountytx.gov

William S. Harris
307 West Seventh Street, Suite 1905
Fort Worth, Texas 76102
wmsharris.law@sbcglobal.net

/s/ John R. Messinger
John R. Messinger
Assistant State Prosecuting Attorney

32